IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| William G. Colson, Jr. and Dorothy R. Colson, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. |
| Samson Hair Restoration, LLC and Geoffrey D. Stiller, MD, | ) ) ) ) | |
| Defendants. | ) | **COMPLAINT** |

Plaintiffs, complaining of Defendants, say:

## PARTIES

1. William G. Colson, Jr., date of birth July 7, 1955. Hereafter, Mr. Colson will be referred to as the "Plaintiff" and/or "Mr. Colson." At the time of the occurrence Mr. Colson was a citizen and resident of Spartanburg, Spartanburg County, South Carolina and was married to Dorothy R. Colson, also a citizen and resident of Spartanburg, Spartanburg County, South Carolina, where they owned their home and maintained their address. Hereafter, Dorothy R. Colson will be referred to as the "Plaintiff" and/or "Mrs. Colson." Mr. and Mrs. Colson are currently married and are currently citizens and residents of Spartanburg, Spartanburg County, South Carolina.

2. Upon information and belief, Plaintiffs allege that Defendant Samson Hair Restoration, LLC is a limited liability company organized under the laws of the state of California and operating in many, if not all, of the United States of America, specifically including the State of South Carolina. Hereafter, this Defendant will be referred to as "Defendant Samson" and/or "Samson."

3. Upon information and belief, Samson Hair Restoration, LLC is a hair transplantation business that maintains a network of physicians in Georgia, California and elsewhere.

4. Upon information and belief, Plaintiffs allege that Defendant Geoffrey D. Stiller, MD, is currently a citizen and resident of Spokane, County of Spokane, State of Washington. Hereafter, this Defendant will be referred to as "Defendant Stiller" and/or "Dr. Stiller." It is further alleged, upon information and belief, that on or about November 19, 2009 Defendant Stiller was a general surgeon at Uplift Cosmetic Surgery & Skin Center located at 14835 Ballantyne Village Way, Suite 210, in Charlotte, North Carolina.

## JURISDICTION AND VENUE

5. Pursuant to 28 U.S.C. § 1332 jurisdiction in this Court is appropriate by virtue of complete diversity of citizenship by and between plaintiffs and all of the defendants in that: Mr. Colson is a citizen and resident of the State of South Carolina and Mrs. Colson is a citizen and resident of the State of South Carolina. Upon information and belief Defendant Samson Hair Restoration, LLC is a limited liability company organized under the laws of the jurisdiction of the state of California and is a foreign limited liability company under the jurisdiction of the state of Georgia. Upon information and belief at all times pertinent hereto Defendant Samson marketed its products and services to residents of the State of South Carolina. Upon information and belief, Defendant Geoffrey D. Stiller was a surgeon in the state of North Carolina at the time of the incident. This case involves alleged fraud, misrepresentation, unfair trade practices and medical negligence perpetrated upon Mr. and Mrs. Colson as set forth herein and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest, costs and/or attorney fees.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the alleged misrepresentation, fraud and unfair trade practices took place in South Carolina.

**GENERAL ALLEGATIONS**

7. In September 2009 Mr. Colson began researching hair transplantation companies for possible hair transplantation on his scalp and decided to complete an on-line assessment from Samson.

8. In October 2009 Mr. and Mrs. Colson met with Tom Snyder, a representative of Defendant Samson, at a restaurant in Greenville County, South Carolina. Mr. Snyder explained to the Colsons at this meeting how Samson was formed, its products and procedures, and represented that the surgery would be performed by an authorized and well-qualified physician.

9. At the October 2009 meeting Tom Snyder of Samson showed the Colsons his full head of hair which he represented was the result of a Samson transplant and told the Colsons that Mr. Colson was an ideal candidate and would get a similar result.

10. The Colsons were impressed at the Greenville County, South Carolina meeting when Tom Snyder told the Colsons that Samson was formed by former members of the Bosley Hair Restoration Company. Tom Snyder also told the Colsons that the Samson founders used their prior experience at Bosley and information from other experts in the field to refine their hair transplant procedures resulting in better outcomes.

11. The Colsons were also impressed at the Greenville, South Carolina meeting when they were told by Tom Snyder that Samson selects the best board certified surgeons who are then trained in Samson's techniques. The Colsons were led to believe at the Greenville, South Carolina meeting that they were getting a "cream of the crop" surgeon trained in the best techniques available in the market at the time.

12. Tom Snyder from Samson directly contacted Mr. and Mrs. Colson at their home in South Carolina via e-mail messages on October 17, 2009, October 20, 2009, October 23, 2009 and November 23, 2009.

13. In late October and early November of 2009, e-mail correspondence between the Colsons and Samson arranged for a hair transplantation surgery to be performed by Dr. Stiller on Mr. Colson at Uplift Cosmetic Surgery & Skin Center located at 14835 Ballantyne Village Way, Suite 210, Charlotte, North Carolina 28277.

14. On or about November 19, 2009, Mr. and Mrs. Colson arrived at 14835 Ballantyne Village Way, Suite 210, Charlotte, North Carolina and met with Dr. Stiller and a representative of Samson (known to the Colsons as "Bill McCollough") and prepared for the surgery. Dr. Stiller documented that he planned a two zone hair transplant – crown and temple recess.

15. On or about November 19, 2009, Dr. Stiller documents that he gave Mr. Colson some oral sedation and antibiotics at his office in Charlotte, North Carolina. Dr. Stiller documented that he then shaved the donor site on the back of Mr. Colson's head and local anesthesia was performed infiltrating along the planned lines of incision with a buffered 1% Lidocaine and 1/100,000 epinephrine and 0.25% Marcaine and 1/200,000 Tumescence in subcutaneousplane with 1/100,000 epinephrine solution throughout the strip.

16. On or about November 19, 2009, Dr. Stiller documents that he next dissected a donor site of hair down to the subcutaneous fascial level and the wound was then closed. Dr. Stiller documents he then proceeded to create recipient sites for the hair with an 18 or 19 gauge trochar needle. Local anesthetic was also used for this procedure. Individual follicular units that

4

had been created were strategically placed by the technicians into the recipient sites. Dr. Stiller documented that approximately 1,800 grafts were used during the surgery.

17. On or about November 19, 2009, Mr. Colson left the Uplift Cosmetic Surgery & Skin Center facility following the surgery and returned to his home.

18. On December 1, 2009, Mr. Colson followed up with Dr. Stiller in his office in Charlotte. Dr. Stiller documented that he identified scalp necrosis in the areas of the hair transplant and noted that Mr. Colson would most likely need scalp reduction surgery and potential skin grafts. Dr. Stiller documented at that time that he discussed the case with "Bill", Defendant Samson's representative who was present on the day of surgery.

19. On December 3, 2009 Mr. Colson followed up with Dr. Stiller in his office. At that visit Dr. Stiller documented that he debrided the wound sharply in the frontal forelock and left crown. Dr. Stiller discussed closure by secondary intent and then tissue expander with scalp reduction in the future.

20. On or about December 9, 2009, Mr. Colson followed up with Dr. Stiller in Charlotte, North Carolina where Dr. Stiller documented "necrotic tissue intacted (sic)." At the same office visit Dr. Stiller documented that he "elevated the eschar and found purulence." Dr. Stiller then documented that he "debrided sharply the left temple and the posterior scalp." Dr. Stiller felt Mr. Colson needed to be admitted to a hospital at that time.

21. On or about December 9, 2009, Michel J. Orseck, MD admitted Mr. Colson to Spartanburg Regional Medical Center with a preoperative diagnosis of scalp necrosis 23 x 15 cm. Surgery occurred December 10, 2009 and Dr. Orseck noted there was an 8 x 4 cm area in the left frontal scalp that was debrided by a previous physician. At that time Dr. Orseck noted the debridement was full thickness and devoid of any periosteum with exposed skull. Dr. Orseck

then debrided the skin and subcutaneous tissue and bone of scalp and skull. A wound vac was placed at that time.

22. Upon the recommendation of Dr. Orseck the Colsons traveled to Augusta, Georgia to see Dr. Edmund F. Ritter for further treatment.

23. On or about December 21, 2009, Edmond F. Ritter, MD further debrided Mr. Colson's scalp and applied Integra to Mr. Colson's scalp wound at MCG Health in Augusta, Georgia.

24. On or about January 6, 2010, Dr. Orseck applied Integra to Mr. Colson's scalp at Spartanburg Regional Medical Center. A follow-up Integra placement procedure was performed on January 29, 2010.

25. On or about February 17, 2010, Dr. Orseck performed a split thickness skin graft from Mr. Colson's left thigh on Mr. Colson's scalp at Spartanburg Regional Medical Center.

26. Upon information and belief, Dr. Stiller left his Charlotte, North Carolina practice and moved to Spokane, Washington shortly after Mr. Colson's surgery.

### FOR A FIRST CAUSE OF ACTION:
### Allegations of Professional Negligence As To Both Defendants

27. At the time of this occurrence, Mr. Colson was a 54-year-old longtime resident of Spartanburg, South Carolina and was a well known and talented bodybuilder. At the time of this occurrence Mr. Colson was retired.

28. In their care and treatment of Mr. Colson, Defendant Stiller was acting within the course and scope of his employment and/or agency with Defendant Samson and both were careless, negligent and acted below the standards of care in the care and treatment of Mr. Colson in some or all of the following ways:

a. Defendant Stiller failed to use his best judgment; failed to exercise reasonable care and diligence in the application of his knowledge and skills; failed to possess and/or apply the degree of professional learning, skill and abilities which others similarly situated ordinarily possess; and failed to act in accordance with the standards of practice applicable to his profession with one of his training and experience situated in the same or similar communities in November 2009;

b. Defendant Samson failed to warn Plaintiff as to special risks of the surgery. Defendant Stiller failed to appropriately appreciate these risks in his decision to proceed with the surgery as well as the manner in which he performed the surgery;

c. Defendants failed to monitor, train or supervise their staff in performing surgery on Mr. Colson's scalp;

d. Defendants negligently discharged Mr. Colson without sufficiently assessing and treating his dangerous medical condition;

29. Defendants' foregoing actions and omissions were a direct and proximate cause of Plaintiff's injuries and damages alleged herein below.

## FOR A SECOND CAUSE OF ACTION
## Common Law Negligence As To Both Defendants

30. The foregoing allegations contained in the Complaint are incorporated by reference herein as full as if restated verbatim.

31. Separately, plaintiffs allege a common law negligence claim against these defendants in that:

a. Defendants Stiller and Samson failed to exercise reasonable care and diligence in the application of their knowledge and skill in that:

       i.      Defendants failed to perform the surgery in accordance with acceptable standards of practice for this hair transplant procedure;

       ii.      Defendants failed to properly monitor Mr. Colson's condition following the surgery.

32. Defendants' actions were a direct and proximate cause of Plaintiff's injuries and damages alleged herein below.

## FOR A THIRD CAUSE OF ACTION
### Fraud and Misrepresentation – Defendant Samson

33. The foregoing allegations contained in the Complaint are incorporated by reference herein as full as if restated verbatim.

34. Defendant Samson by and through its agent Tom Snyder made a false representation to Mr. Colson with regard to the competency and experience of the doctor who would be performing Mr. Colson's surgery.

35. This false representation was material to the decision of the Colsons to go forward with the surgery.

36. Defendant Samson either knew or acted in reckless disregard of the falsity of its representations regarding the ability, experience and quality of Defendant Stiller's medical hair transplantation abilities.

37. The Greenville, South Carolina meeting with Tom Snyder that outlined the surgery clearly demonstrates that Defendant Samson intended that their representations would be relied upon by the Colsons.

38. The Colsons were ignorant of the falsity of Defendant Samson's representation.

39. The Colsons relied on the truth of Defendant Samson's representations, and had the right to rely on those representations.

40. Defendant's actions and representations were a direct and proximate cause of Plaintiff's injuries and damages alleged herein below.

### FOR A FOURTH CAUSE OF ACTION
### Negligent Misrepresentation – Defendant Samson

41. The foregoing allegations contained in the Complaint are incorporated by reference herein as full as if restated verbatim.

42. Defendant Samson by and through its agent Tom Snyder made a false representation to Mr. and Mrs. Colson with regard to the competency and experience of the doctor who would be performing Mr. Colson's surgery.

43. Defendant Samson had a pecuniary interest in making the statements regarding the competency and experience of the doctor who would be performing Mr. Colson's surgery.

44. Defendant Samson owed a duty of care to see that truthful information was communicated to the Plaintiff.

45. Defendant Samson breached the duty of care owed to Mr. and Mrs. Colson by failing to exercise due care.

46. Plaintiffs justifiably relied on Samson's representation.

47. Plaintiff's suffered a pecuniary loss as a direct and proximate result of reliance on Samson's representations to Plaintiffs.

### FOR A FIFTH CAUSE OF ACTION
### Violation of the South Carolina Unfair Trade Practices Act – Defendant Samson

48. The foregoing allegations contained in the Complaint are incorporated by reference herein as full as if restated verbatim.

49. Defendant Samson, by and through its agents, and otherwise, has and is engaging in trade or commerce directly, or indirectly, affecting the people of South Carolina.

50. Defendant Samson, by and through its agents, and otherwise, committed a violation of the South Carolina Unfair Trade Practices Act ("SCUPTA") in that it used unfair methods of competition and unfair and deceptive acts or practices in the conduct of its trade or commerce.

51. Defendant Samson has repeatedly and willfully engaged in the following conduct which constitutes a deceptive trade practice and a violation of SCUTPA:

 a. Failing to warn customers as to special risks of the surgery;

 b. Making false and misleading representations to customers with regard to the competency and experience of doctors who would be performing the surgery;

 c. Making deceptive representations to customers regarding the quality of medical care that would be provided.

52. Defendant made, and continues to make, orally and in writing, false, misleading or deceptive representations in advertisements, promotions, and statements, including in its sales meetings with customers, and otherwise disseminated, and continue to disseminate, false, misleading, or deceptive information to the public, including South Carolina citizens, regarding the safety, competency and knowledge associated with its hair transplantation procedures.

53. Defendant acted knowingly and willfully in committing the violations of SCUTPA described herein.

54. Said acts committed by Defendant Samson are capable of repetition and affect the public interest in that the public should be protected from unfair deceptive trade practices that may lead to serious injury and/or death.

55. Defendant's violations of the SCUPTA were a direct and proximate cause of Plaintiff's injuries and damages alleged herein below.

## FOR A SIXTH CAUSE OF ACTION
### Negligent Hiring, Training and Supervision of Defendant Geoffrey D. Stiller by Defendant Samson

56. The foregoing allegations contained in the Complaint are incorporated by reference herein as full as if restated verbatim.

57. Defendant Samson was, upon information and belief, negligent, grossly negligent, and reckless in the following particulars, to wit:

   a. In the hiring and retaining of Defendant Stiller as a general surgeon;

   b. In failing to provide proper and adequate training for Defendant Stiller so that he could properly and safely perform the hair transplant without causing harm to other patients such as Mr. Colson;

   c. In failing to properly and adequately supervise Defendant Stiller;

   d. In failing to exercise the degree of care and caution that a reasonable and prudent employer would have exercised under the circumstances then and there existing.

58. Defendants' actions were a direct and proximate cause of Plaintiff's injuries and damages alleged herein below.

## FOR A SEVENTH CAUSE OF ACTION
### Loss of Consortium

59. The foregoing allegations contained in the Complaint are incorporated by reference herein as full as if restated verbatim.

60. Plaintiff Dorothy R. Colson is now, and was at all times pertinent herein, a citizen and resident of Spartanburg County, South Carolina and the loving spouse of Plaintiff William G. Colson.

61. As a result of the injuries sustained by Plaintiff William G. Colson, Plaintiff Dorothy R. Colson was deprived of the society, companionship, consortium and services of her husband, William G. Colson.

62. Accordingly, Plaintiff Dorothy R. Colson has been damaged and believes that she is entitled to judgment against Defendants for compensatory damages in regard to her loss of consortium claim in such amount as determined appropriate by the jury at the trial of this case.

## **DAMAGES**

63. Plaintiffs incorporate herein by reference all previous paragraphs of this complaint.

64. Prior to this occurrence, Mr. Colson was age 54 (date of birth: July 7, 1955) and was married to Plaintiff Dorothy R. Colson.

65. As a proximate cause of Defendants' negligence as averred in this complaint, Mr. Colson has been damaged generally including, but not limited to the following:

    a. He has incurred expenses for hospitals, doctors and other health care providers, medications, medical supplies and other medical care;

    b. He will in the future incur expenses for hospitals, doctors and other health care providers, medications, medical supplies and other medical care;

    c. He has experienced pain and suffering, including mental and emotional distress;

    d. He continues to experience and will in the future experience pain and suffering, including mental and emotional distress;

    e. He has sustained permanent injury;

    f. He has lost the use of a part of his body; and

g. He has suffered damages in other ways to be shown upon trial of this action including damages identified in N.C.P.I. §§810.02, 810.04, 810.08, 810.10, 810.12, 810.14 which are incorporated herein by reference as if fully set forth.

## RULE 9j CERTIFICATION

66. Plaintiffs incorporate herein by reference all previous paragraphs of this complaint.

67. As this matter is being filed in Federal Court based on the Diversity of Citizenship of the parties, plaintiffs are informed and believe that no Rule 9j Certification as required by the North Carolina Rules of Civil Procedure is required. However, in the event that same is deemed to be required, Plaintiffs certify that they had the medical care rendered by the defendants reviewed by a professional, reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and this expert witness is expected to testify that the care of these defendants rendered to Mr. Colson was substandard and that this substandard care proximately caused the disfigurement of Mr. Colson.

68. Additionally, this Certification is related only to those matters defined by said Rule 702 and Rule 9 of the North Carolina Rules and said Certification relates to those matters that require said Certification; and Plaintiffs note that Plaintiffs have also made allegations of common law negligence alleging that these defendants did not exercise reasonable care and diligence as defined in the North Carolina Supreme Court case of Wall v. Stout, in their care of Mr. Colson and with respect to those allegations no such Certification is required.

WHEREFORE, Plaintiffs respectfully pray the Court as follows:

1. That TRIAL BY JURY be held on all issues;

13

2. That judgment be entered against the Defendants jointly and severally in an amount that exceeds the sum of $75,000.00 exclusive of interest, costs, and/or attorney fees for actual, compensatory, consequential, and punitive damages;

3. That costs of this action be taxed against Defendants;

4. That costs, attorney fees, and treble damages be awarded against Defendant Samson pursuant to the SCUPTA; and

5. For such other and further relief as to the Court seems just and proper.

HARRISON, WHITE, SMITH & COGGINS, PC

s/Donald C. Coggins, Jr.
Donald C. Coggins, Jr.
Federal Bar No. 198
Email: dcoggins@spartanlaw.com

s/Thomas A. Killoren, Jr.
Thomas A. Killoren, Jr.
Federal Bar No. 7721
Email: tom@spartanlaw.com

Attorneys for Plaintiff
Harrison, White, Smith & Coggins, PC
PO Box 3547
Spartanburg, SC 29304
Telephone: (864) 585-5100
Fax: (864) 542-2993

DATE: AUGUST 12, 2011